IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

UNITED STATES OF AMERICA

v.                                          Criminal No. 3:07CR418

ERNEST CARL DARCUS, JR.

## MEMORANDUM OPINION

Ernest Carl Darcus, Jr., a federal inmate proceeding pro se, submitted this motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence ("§ 2255 Motion," ECF No. 133).[1] Darcus claims that ineffective assistance of counsel[2] rendered his guilty plea unknowing and involuntary. Specifically, Darcus demands relief because:

Claim One:    "Petitioner assert[s] that his guilty plea was not knowing voluntary intelligently made because counsel gave incorrect advice, a disagreement about the plea between the two parties making agreement void, because counsel failed to investigate the facts of agreement and get the entire plea incorporated into the final written plea agreement." (§ 2255 Mot. at 4.)

Claim Two:    "Petitioner assert[s] that his guilty plea was not knowingly voluntary intelligently made because counsel

---

[1] The Court has employed the pagination assigned to Darcus's submissions by the CM/ECF docketing system, and has corrected the spelling and capitalization in quotations from Darcus's submissions.

[2] "In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend VI.

fail[ed] to comply with Rule 11(c)(2), duty to disclose all elements of plea agreement to court at the taking of the plea. Causing Rule 11 to fail and find out that there was <u>not</u> an agreement between the two parties making the plea agreement void." (<u>Id.</u> at 5.)

Claim Three:    "Petitioner assert[s] that his guilty plea is not knowing voluntarily intelligently because counsel gave him incorrect advice that he got from judge during plea negotiation in a phone conference call between judge, U.S. Attorney, and counsel, violating rule 11(c)(1)." (<u>Id.</u> at 7.)

Claim Four:     "Petitioner's trial counsel rendered ineffective assistance during a critical stage of case. 'During the motion to withdraw plea hearing,' counsel fail[ed] to show court his errors that caused Petitioner to plead guilty and enter a[n] unknowing voluntary intelligent plea. Also failure to object to misleading, false testimony during the hearing to uphold the illegal search got the motion to withdraw denied." (<u>Id.</u> at 8.)

Claim Five:     "Illegal search and seizure of Petitioner's vehicle violating Petitioner[']s Fourth Amendment of the United States Constitution." (<u>Id.</u> at 11.)

The Government responded, asserting that Darcus's claims lack merit. (ECF No. 138.) Darcus subsequently filed a reply ("Reply," ECF No. 147). The majority of Darcus's claims stem from his ongoing belief that counsel failed to incorporate into his plea agreement promises that the Government did not make,

thereby obtaining a more favorable plea. As discussed below, these claims are entirely meritless.

## I. PROCEDURAL HISTORY

On November 6, 2007, a grand jury charged Darcus with one count of possession with the intent to distribute fifty (50) grams or more of cocaine base. (Indictment 1, ECF No. 1.) The Indictment was based upon an encounter between Darcus and Henrico County police officers on August 26, 2007. (Statement of Facts ¶¶ 1-9, ECF No. 66.) On that date, police found 328.4 grams of cocaine base and 108.4 grams of cocaine hydrochloride in a backpack recovered from Darcus's GMC Yukon after execution of a search warrant. (Id. ¶¶ 6-7.)

On October 1, 2008, Darcus, through counsel, Amy Austin, filed his first motion to suppress, arguing that the officers had seized him without reasonable suspicion when he was in front of the hotel where his vehicle, a Yukon, was parked. (ECF No. 15.) A hearing was held on that motion on October 23-24, 2008. During the hearing, officers testified that, after they stopped Darcus, they learned that there was an outstanding arrest warrant for him. (Oct. 23, 2008 Tr. 22-24, 70.) The officers did not discover the drugs in the Yukon until after they had arrested Darcus and had taken him to the police station. (Oct.

23, 2008 Tr. 25.)   After learning that he outstanding arrest warrant was for a drug offense, the officers obtained a search warrant for the Yukon, returned to the hotel parking lot to execute the search warrant, and found the drugs. (Oct. 23, 2008 Tr 24-25.)[3]   After making factual findings, the Court denied the motion to suppress, finding that there had not "been a sufficient show of authority to warrant the conclusion that a reasonable person would have felt unfree to leave under the circumstances." (Oct. 24, 2008 Tr. 42-43.)

By Order entered on December 4, 2008, the Court noted that it would treat a letter received from Darcus as a motion for the appointment of new counsel. (ECF No. 31.)   Following a hearing, the Court granted Darcus's motion. (ECF No. 34.)   Charles Gavin was subsequently appointed to represent Darcus. (ECF No. 38.)

On February 3, 2009, Darcus, through counsel, filed a second motion to suppress, arguing that Officer Riopedre's inconsistent testimony during the hearing on the first motion to suppress demonstrated that the officers had illegally searched the Yukon. (Mem. Supp. Mot. Suppress 3, ECF No. 41.) Specifically, Darcus asserted that Officer Riopedre's testimony

---

[3] On cross-examination, Officer Riopedre admitted that he had looked in the Yukon before leaving the parking lot. (Oct. 23, 2008 Tr. 51-52.)   He scanned the driver's area, saw two (2) cell phones, and opened the truck, where he saw a black duffle bag. (Oct. 23, 2008 Tr. 52-54.)

during the first part of the October 2008 hearing, wherein he testified that he only searched the car once he obtained a warrant, "was entirely inconsistent with his later testimony during which Riopedre finally admitted that he did, in fact, look in the Yukon prior to leaving the parking lot." (Id. at 2 (citation omitted).)    Based upon this alleged inconsistency, Darcus asserted that Officer Riopedre "discovered contraband in the Yukon" as a result of the initial, illegal search.  (Id. at 3.)    Darcus further alleged that, upon "realizing that . . . discovery [of the contraband] was illegally obtained, Officer Riopedre then engaged in additional legal processes, including the acquisition of a valid search warrant, to legitimize the prior illegal entry." (Id.)

A hearing was held on the second motion.  Officer Riopedre testified that after he arrested Darcus on the outstanding warrant (Feb. 26, 2009 Tr. 230), he patted him down and found the keys to the Yukon.  (Feb. 26, 2009 Tr. 205.)  Officer Riopedre placed Darcus in the police car, opened the Yukon, scanned it for weapons, and observed the duffel bags in the back of the car.  (Feb. 26, 2009 Tr. 206.)  Officer Riopedre stated that he did not touch or search the bags, but shut the hatch of the car.  (Feb. 26, 2009 Tr. 206.)  At the station, Officer Riopedre asked for a canine search of the Yukon after he learned

5

that the Yukon was registered to Darcus, and that Darcus had a prior drug conviction and an outstanding warrant. (Feb. 26, 2009 Tr. 207, 211-12.) The canine alerted to the presence of drugs in the Yukon and Officer Riopedre obtained a search warrant. (Feb. 26, 2009 Tr. 212-13.)

The Court found that, based upon a preponderance of the evidence, Darcus had been lawfully arrested before "any officer ever entered the vehicle for any purpose." (Feb. 26, 2009 Tr. 275.) The Court determined that the officers reasonably believed that Darcus was a recent occupant of the Yukon as he possessed keys fitting the Yukon and was in close spatial and temporal proximity to the Yukon at the time of his arrest.[4] (Feb. 26, 2009 Tr. 277-280.) The Court "recognize[d] that Officer Riopedre was impeached in some instances by his testimony that he asked for consent, then he didn't ask for consent in the prior hearing or this hearing." (Feb. 26, 2009

---

[4] In making this finding, the Court relied upon New York v. Belton, 453 U.S. 454 (1981), abrogated by Arizona v. Gant, 556 U.S. 332 (2009), and Thornton v. United States, 541 U.S. 615 (2004). The Belton Court held that when an occupant of a vehicle is lawfully arrested, officers may search the passenger compartment of the automobile and any containers therein. 453 U.S. at 460. The Thornton Court held that "Belton governs even when an officer does not make contact until the person arrested has left the vehicle." 541 U.S. at 617.

Tr. 279.)[5]   However, the Court found that Officer Riopedre's
testimony was credible "notwithstanding that he had been
impeached in some respects because the impeachment goes to a
matter that wasn't really critical to the issue of obtaining the
search warrant."  (Feb. 26, 2009 Tr. 279-80.)  Based upon these
findings, the Court denied the second motion to suppress.  (Feb.
26, 2009 Tr. 280.)

On March 3, 2009, Gavin and counsel for the Government, and
the Court convened in a telephone conference.  Gavin represented
that he had received a call from Darcus's father stating that
Darcus wanted to "plead straight up with preservation of his
right to challenge the pretrial suppression issues and other

---

[5] During the February 26, 2009 suppression hearing, Gavin
questioned Officer Riopedre about his prior testimony on October
23, 2008, as follows:
    Q    Did you ever ask Mr. Darcus at the scene for
    permission to enter the vehicle?
    A    No.
    Q    In your testimony of October 23, you were asked
    the question:  You never asked him if you could look
    into the car?
         Your answer:  The vehicle, yes.
         After he was taken into custody.
         Yes.
         You asked if you could search the car.
         Answer:  That's correct.
         Do you recall that as being your testimony?
    A    I recall that as being my testimony, yes.
    Q    So did you ask him whether or not you could
    search the car?
    A    I did not ask him.

(Feb. 26, 2009 Tr. 217.)

7

issues that he's already lost upon." (Mar. 3, 2009 Tr. 2.) The Court recalled that, for a defendant to preserve such issues for appeal through a conditional plea, the Government must agree to the conditional plea. (Mar. 3, 2009 Tr. 2-3.)[6] The Government stated that it would not agree to such a plea. (Mar. 3, 2009 Tr. 3, 5-6.) Gavin mentioned having a bench trial based upon stipulated evidence. (Mar. 3, 2009 Tr. 6.) The Court noted that it would be "very difficult" to do that in this case because there was "a lot of evidence" at issue. (Mar. 3, 2009 Tr. 7.) Gavin indicated that he would discuss the options with Darcus and report back to the Court. (Mar. 3, 2009 Tr. 7-8.)

Later the same day, Darcus entered into a Plea Agreement and pled guilty to the one-count Indictment. (ECF No. 65; see Plea Agreement ¶ 1.) The Plea Agreement recited correctly the penalties for the offense, including a mandatory minimum term of imprisonment for ten (10) years and a maximum term of imprisonment for life. (Plea Agreement, ¶ 1.) The Plea Agreement, that Darcus signed, recited that Darcus was "satisfied that [his] attorney has rendered effective assistance." (Id. ¶ 4.) It further provided that the "United States makes no promise or representation concerning what sentence the defendant will receive." (Id. ¶ 5.) Darcus

---

[6] The Court was referring to the law set forth in United States v. Bundy, 392 F.3d 641 (4th Cir. 2004).

understood that he was waiving his right to appeal "the conviction and any sentence within the statutory maximum . . . (or the manner in which that sentence was determined) on the grounds set forth in Title 18, United States Code, Section 3742 or on any ground whatsoever . . . ." (Id. ¶ 6.) Finally, Darcus agreed that the Plea Agreement was the "complete plea agreement," and that "no threats, promises, or representations ha[d] been made, nor agreements reached, other than those set forth in writing in this plea agreement, to cause [him] to plead guilty." (Id. ¶ 20.)

Darcus appeared before the Honorable Henry E. Hudson for Rule 11 proceedings that same day.[7] When asked, Darcus stated that he had completed the eleventh grade, and that he could read, write, and understand English. (Mar. 3, 2009 Tr. 3 ("Plea Tr."), ECF No. 77.) Darcus agreed that he "had a thorough opportunity to discuss this case with [his] attorney" and was "entirely satisfied" with counsel's services. (Plea Tr. 4.) Darcus confirmed that there had been no promise made to him in exchange for his plea of guilty. (Plea Tr. 8.) Specifically, Darcus stated that no one had promised that he would receive a specific sentence in exchange for his guilty plea. (Plea Tr. 8-9.) Darcus agreed that he understood that he was waiving his

---

[7] The undersigned was in a jury trial at that time, and the parties desired to conclude the plea. (Mar. 3, 2009 Tr. 2.)

right to appeal his conviction and any sentence imposed within the mandatory minimum and maximum penalties. (Plea Tr. 16-17.) At the end of the Rule 11 proceedings, the Court determined that Darcus's guilty plea was "voluntarily, knowingly and intelligently entered." (Plea Tr. 19.)

Subsequently, on September 2, 2009, Darcus, through counsel, filed a motion to withdraw the plea of guilty (see ECF Nos. 81, 82). Gavin also filed a motion to withdraw as counsel (see ECF No. 83). Darcus requested that the Court permit him to withdraw his plea and reconsider the previous rulings denying his motions to suppress based upon the Supreme Court's recent decision in Arizona v. Gant, 566 U .S. 332 (2009).[8] (See ECF No. 82, at 2.) The Court held a hearing on Darcus's motions on October 1, 2009. The Court first denied Gavin's motion to withdraw as Darcus's counsel. (Oct. 1, 2009 Tr. 9-10.) The Court then heard testimony from Officer Philip Johnakin, as well as argument from the parties, regarding Darcus's motion to withdraw his plea of guilty. (Oct. 1, 2009 Tr. 11-34.) The Court found that "the burden to establish the predicates to withdraw the guilty plea ha[s] not been met," and denied

---

[8] In Gant, the Supreme Court held that "[p]olice may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest." 556 U.S. at 351.

10

Darcus's motion to withdraw his guilty plea. (Oct. 1, 2009 Tr. 35.)

At the sentencing hearing on October 26, 2009, counsel for the Government requested that the Court impose a sentence to run consecutive to the state sentence Darcus was serving at that time. (Oct. 26, 2009 Tr. 13.) Darcus's counsel requested that the Court impose a concurrent sentence. (Oct. 26, 2009 Tr. 14.) The Court sentenced Darcus to 292 months of imprisonment, to run consecutively to his state sentence. (J. 2, ECF No. 92.)

By Memorandum Opinion and Order entered on November 24, 2009, the Court explained its reasons for denying the motion to withdraw guilty plea. United States v. Darcus, No. 3:07cr418, 2009 WL 4110262 (E.D. Va. Nov. 24, 2009).[9] The Court determined that Darcus had not presented a fair and just reason to withdraw his guilty plea. Id. at *6. The Court further concluded that,

---

[9] The Court considered the following six (6) non-exclusive factors to determine whether Darcus had met his burden of showing a "fair and just reason" to withdraw his plea:

> (1) whether Darcus has offered credible evidence that his plea was not knowing or not voluntary, (2) whether Darcus has credibly asserted his legal innocence, (3) whether there has been a delay between the entering of the plea and the filing of the motion, (4) whether defendant has had close assistance of competent counsel, (5) whether withdrawal will cause prejudice to the government, and (6) whether it will inconvenience the court and waste judicial resources.

Darcus, 2009 WL 411062, at *2 (citing United States v. Moore, 931 F.2d 245, 248 (4th Cir. 1991)).

even if it were to grant Darcus's motion to withdraw his guilty plea, another motion to suppress would not be granted, because the inventory exception to the warrant requirement applied. <u>Id.</u> at *6-7.

Darcus, through counsel, filed a Notice of Appeal on October 28, 2009. (ECF No. 94.) Darcus filed a <u>pro</u> <u>se</u> Notice of Appeal on October 30, 2009. (ECF No. 96.) On May 20, 2011, the United States Court of Appeals for the Fourth Circuit granted the Government's motion to dismiss Darcus's appeal, finding that the "record conclusively shows that Darcus knowingly and voluntarily waived his right to appeal and that the issues Darcus seeks to raise on appeal fall squarely within the waiver of his appellate rights." (ECF No. 124, at 2.) The Supreme Court denied Darcus's petition for a writ of certiorari on November 14, 2011. <u>Darcus v. United States</u>, 132 S. Ct. 576 (2011).

## II.  ANALYSIS

### A.  § 2255 Motion

#### 1.  Ineffective Assistance of Counsel

To demonstrate ineffective assistance of counsel, a convicted defendant must show first, that counsel's representation was deficient and second, that the deficient

12

performance prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687 (1984). To satisfy the deficient performance prong of Strickland, the convicted defendant must overcome the "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'" Burch v. Corcoran, 273 F.3d 577, 588 (4th Cir. 2001) (quoting Strickland, 466 U.S. at 689). The prejudice component requires a convicted defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. In analyzing ineffective assistance of counsel claims, it is not necessary to determine whether counsel performed deficiently if the claim is readily dismissed for lack of prejudice. Id. at 697.

In the context of a guilty plea, the Supreme Court has modified this second prong of Strickland to require the convicted defendant to "show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985). Of course, in conducting the foregoing inquiry, the representations of the convicted

13

defendant, his lawyer, and the prosecutor during the plea proceedings, "as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings." Blackledge v. Allison, 431 U.S. 63, 73-74 (1977). In light of the strong presumption of verity that attaches to a petitioner's declarations during his plea proceedings, "in the absence of extraordinary circumstances, allegations in a § 2255 motion that directly contradict the petitioner's sworn statements made during a properly conducted Rule 11 colloquy are always 'palpably incredible' and 'patently frivolous or false.'" United States v. Lemaster, 403 F.3d 216, 221 (4th Cir. 2005) (citations omitted). Thus, the Fourth Circuit has admonished that, "in the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements." Id. at 221-22. Nothing in the record would permit the Court to consider Darcus's sworn statements at the plea colloquy as other than truthful.

    a.   Involuntariness of Plea—Claims One, Two, Three

In Claim One, Darcus claims that he failed to receive effective assistance of counsel in conjunction with his guilty plea because Gavin gave him incorrect advice about the agreement between the parties and failed to have certain promises from the Government included in the agreement. (§ 2255 Mot. 4.) Specifically, Darcus asserts that counsel failed to have three promises incorporated into the Plea Agreement: (1) that the Government would "not file an enhancement;" (2) that the Government would not argue in support of a career offender enhancement; and (3) that the Government would not advance a position that Darcus's sentence should run consecutively to his state sentence. (§ 2255 Mot. Attach. 1, at 3-4.) Darcus claims that counsel told him that: "[t]he government will not advance a position in _favor_ _of_ or _against_ a sentence which would run concurrent to his existing state sentence," and that this statement "induce[d] him to plead guilty." (Reply 8.) Darcus also asserts that counsel failed to argue that the Government had breached the Plea Agreement by arguing for a consecutive sentence at sentencing. (_Id._ at 1, 9.) He relies on an email exchange between Gavin and counsel for the Government to support that argument. (§ 2255 Mot. Ex. E.)

15

The email exchange demonstrates that the Government agreed not to file an "enhancement." (§ 2255 Mot. Ex. E, at 1.) Neither Darcus nor the record makes clear what enhancement he refers to. To the extent that Darcus is referring to an enhancement pursuant to 21 U.S.C. § 851, the record demonstrates that no enhancement was filed. Accordingly, Darcus cannot show that counsel's failure to have this agreement incorporated into the Plea Agreement prejudiced him in any way.

As to the claim that the Government promised not to argue in support of a career offender enhancement, the email exchange demonstrates that the Government made no such promise. Rather, the parties agreed that, if the Probation Office determined that Darcus did not qualify as a career offender, the Government would not object to that finding. (Id.) Accordingly, counsel cannot be faulted for failing to ensure that a nonexistent promise was incorporated into the Plea Agreement.

Likewise, the email exchange shows that the Government made no promise not to argue for a consecutive sentence. Gavin emailed counsel for the Government on March 3, 2009, before the entry of Darcus's guilty plea, stating that it was his understanding that the Government would "not advance a position in favor of, or against, a sentence which would run concurrent to [Darcus's] existing state sentence." (Id.) Counsel for the

Government responded that, if Gavin moved for the sentence to run concurrently, she would not remain silent. (Id.) Instead, she would "be required to point out that the guidelines call for a consecutive sentence." (Id.)

In view of this correspondence, the Court does not credit Darcus's assertion that Gavin told him that the Government agreed not to push for a consecutive sentence. Moreover, the Plea Agreement and the plea colloquy undercut Darcus's contention. By signing the Plea Agreement, Darcus acknowledges that he understood that the "United States makes no promise or representation concerning what sentence [he] will receive." (Plea Agreement ¶ 5.) Also, during the Rule 11 proceedings, Darcus stated that he was not relying on any promises outside of the Plea Agreement in making his decision to plead guilty. (Plea Tr. 8.) Given this record, Darcus's claim that his plea was induced by the alleged promise by counsel that the Government would not seek a consecutive sentence is palpably incredible in light of his representations.[10] See Lemaster, 403 F.3d at 221. Accordingly, Claim One will be dismissed.

In Claim Two, Darcus claims that counsel failed to disclose all of the elements of the plea to the Court. (§ 2255 Mot. 5.)

---

[10] Furthermore, this Court previously found that Darcus's plea was "knowingly and voluntarily entered" when denying his motion to withdraw his plea. Darcus, 2009 WL 4110262, at *3.

Specifically, Darcus asserts that counsel failed to bring the parties' alleged agreement concerning a concurrent sentence to the Court's attention. However, as explained above, no such agreement existed. That disposes of Claim Two, and it will be dismissed.

In Claim Three, Darcus claims that his plea was involuntary because his counsel gave him incorrect advice obtained from the Court during the conference call held on March 3, 2009. (§ 2255 Mot. 7.) First, Darcus claims that Gavin told him that counsel for the Government said that she would file an enhancement pursuant to 21 U.S.C. § 851 to seek life imprisonment if Darcus did not plead guilty that day. (§ 2255 Mot. Ex. G, at 1.) Darcus asserts that counsel coerced him into entering the Plea Agreement by making this statement. (Id. at 3.)

Nothing in the record supports Darcus's assertion that Gavin informed Darcus that, if he did not plead guilty, the Government would file an § 851 enhancement. Nevertheless, the Court cannot conclude that Gavin's alleged statement, even if given, prejudiced Darcus in any way. Under 21 U.S.C. § 841(b)(1)(A), if a defendant has been convicted of "two or more . . . felony drug offense[s] . . . such person shall be sentenced to a mandatory term of life imprisonment without release." 21 U.S.C. § 841(b)(1)(A). Darcus's Pre-Sentence

Investigation Report ("PSR") reflects that, in 1990, Darcus was convicted of possession of cocaine with intent to distribute. (PSR ¶ 32.)  In 1997, he was convicted of, _inter_ _alia_, conspiracy to distribute cocaine base.  (_Id._ ¶ 36.)  In 2006, he was again convicted of possession of cocaine with intent to distribute.  (_Id._ ¶ 37.)  Thus, Darcus certainly would have qualified for an § 851 enhancement.  Assuming that counsel did pass along that information to Darcus, and did advise him to plead guilty because of it, counsel cannot be faulted for advising him to plead guilty to avoid mandatory life imprisonment.  And, Darcus has not shown that such advice, if given, was ineffective.

Darcus also alleges that counsel was ineffective for failing to request a continuance to research the law concerning either a conditional plea that would allow him to appeal the denial of his motions to suppress, or a "bench trial on stipulated facts."  (§ 2255 Mot. Attach. 3, at 5.)  Neither point has merit.  There was no need to research because during the telephone conference, counsel for the Government explicitly stated that she would not agree to a conditional plea.  (Mar. 3, 2009 Tr. 3.)  Moreover, the Court told counsel that a bench trial on stipulated facts would not be possible because too many facts were in dispute.  (Mar. 3, 2009 Tr. 6-7.)  Accordingly,

counsel cannot be faulted for failing to request a continuance for further investigation into options that were not viable. See Killian v. United States, Nos. 3:04CV241-1-MU, 3:93CR74-02, 3:93CR80-01, 2007 WL 2491053, at *3 (W.D.N.C. Aug. 28, 2007), (finding that counsel was not ineffective for failing to discuss a conditional plea because the record showed that the Government would not have agreed to such a plea), appeal dismissed by 279 F. App'x 223 (4th Cir. 2008). Claim Three lacks merit and will be dismissed.

### b. Claim Four—Various Assertions of Ineffective Assistance

In Claim Four, Darcus asserts that counsel rendered ineffective assistance in various ways. Darcus claims that counsel was ineffective during the hearing on his motion to withdraw his guilty plea because counsel failed to advise the Court that the parties had agreed to recommend a concurrent sentence. (§ 2255 Mot. 8; § 2255 Mot. Ex. G.) As discussed previously, the parties never agreed to a concurrent sentence. Thus, counsel cannot be faulted for failing to bring this nonexistent promise to the Court's attention.

Next, Darcus asserts that counsel was ineffective by giving incorrect advice concerning the conference call that occurred on

20

March 3, 2009.  (§ 2255 Mot. Ex. G.)  As discussed above in Part II.A.1.a, this contention is without merit.

Darcus next claims that counsel was ineffective for failing to object to "misleading, false testimony" during the hearing on the motion to withdraw his guilty plea.  (§ 2255 Mot. 8.) Darcus asserts that, during that hearing, Officer Johnakin testified that "a search can be done on a legally parked vehicle left by policy." (Reply 12.)  Darcus has attached a copy of the Henrico County Police Department's vehicle towing policy, which states that inventory searches should not be conducted "[o]n any vehicle not taken into custody." (Reply, Ex. F, at 3.)

As an initial matter, the record reflects that Gavin thoroughly cross-examined Officer Johnakin concerning whether Darcus's vehicle was legally parked and whether officers intended to tow the vehicle.  (Oct. 1, 2009 Tr. 15-16.) Nevertheless, Darcus has failed to show how counsel's failure to explicitly object to Officer Johnakin's testimony as false and misleading prejudiced his defense.  The Court concluded that the search would qualify as an inventory search even though Darcus's vehicle was left at the scene.  Darcus, 2009 WL 4110262, at *6-7.  Thus, any objection based on Henrico County policy would have had no impact on the proceeding.  Darcus demonstrates no deficiency of counsel or resulting prejudice.

Finally, Darcus suggests that counsel was ineffective for not informing the Court that Darcus has a disability that causes him to have issues with understanding. (§ 2255 Mot. Ex. K.) However, during the Rule 11 proceedings, Darcus advised the Court that he had completed eleventh grade, and that he could read, write, and understand English. (Plea Tr. 3.) He also advised that he had not been treated for any psychological, psychiatric, or mental disorders during the previous year. (Plea Tr. 4.) Furthermore, Darcus responded in the negative when asked by Judge Hudson if there was anything that had occurred during the colloquy that Darcus did not understand. (Plea Tr. 18.) Given this, Darcus's claim is palpably incredible in light of his representations during the Rule 11 proceedings. See Lemaster, 403 F.3d at 221. Accordingly, Claim Four will be dismissed.

### 2. Fourth Amendment Violation

In Claim Five, Darcus asserts that the search and seizure of his vehicle violated his Fourth Amendment rights. (§ 2255 Mot. 11.) He has also filed a second motion to amend his § 2255 Motion to present more argument concerning this claim. ("Second Motion to Amend," ECF No. 155.) However, "[o]nce a litigant is provided a full and fair opportunity to litigate a Fourth Amendment claim, he cannot re-litigate the claim in a motion

22

pursuant to § 2255 unless there has been an intervening change in the law." United States v. Schulte, No. 99-7667, 2000 WL 1390205, at *1 (4th Cir. Sept. 26, 2000) (citing Stone v. Powell, 428 U.S. 465, 494 (1976)).  Here, Darcus, through counsel, litigated his Fourth Amendment claim through two motions to suppress, as part of the motion to withdraw his guilty plea, and on appeal to the Fourth Circuit.  Darcus also identifies no intervening change of law that would allow him to relitigate this claim.  Accordingly, Claim Five will be dismissed, and Darcus's Second Motion to Amend (ECF No. 155) will be denied.[11]

**B.    First Motion To Amend § 2255 Motion**

"Under Rule 15(a) leave to amend shall be given freely, absent bad faith, undue prejudice to the opposing party, or futility of amendment." United States v. Pittman, 209 F.3d 314,

---

[11] In his Reply, Darcus argues that, in the alternative, his appellate counsel was ineffective "by failing to show the Court the Henrico policy on inventory and that the Government entered false, misleading evidence during the motion to withdraw plea hearing that got motion denied." (Reply 47.)  However, a presumption exists that appellate counsel "'decided which issues were most likely to afford relief on appeal.'" Bell v. Jarvis, 236 F.3d 149, 164 (4th Cir. 2000) (quoting Pruett v. Thompson, 996 F.2d 1560, 1568 (4th Cir. 1993)).  "'[O]nly when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome.'" Id. (quoting Smith v. Robbins, 528 U.S. 259, 288 (2000)). Darcus has failed to demonstrate that the issue he raises was a clearly stronger argument than those issues counsel chose to pursue on appeal; therefore, the Court cannot find that appellate counsel was ineffective.

317 (4th Cir. 2000) (citations omitted).  In his first motion to amend ("First Motion to Amend," ECF No. 154), Darcus attempts to add various claims of ineffective assistance to his § 2255 Motion.

The Court appropriately denies as futile leave to amend, when the statute of limitations bars the new claim.  See Ingram v. Buckingham Corr. Ctr., No. 3:09CV831, 2011 WL 1792460, at *1 (E.D. Va. May 5, 2011).  As discussed below, the statute of limitations bars Darcus's claims and they are futile.

### 1.  Statute Of Limitations

Section 101 of the Antiterrorism and Effective Death Penalty Act ("AEDPA") amended 28 U.S.C. § 2255 to establish a one-year period of limitation for the filing of a § 2255 Motion. Specifically, 28 U.S.C. § 2255(f) now reads:

> **(f)** A 1-year period of limitation shall apply to a motion under this section.  The limitation period shall run from the latest of—
>
> > **(1)** the date on which the judgment of conviction becomes final;
> >
> > **(2)** the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
> >
> > **(3)** the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made

24

> retroactively applicable to cases on collateral review; or
>
> **(4)** the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).

Because Darcus filed a petition for writ of certiorari, under 28 U.S.C. § 2255(f)(1), his conviction became final on November 14, 2011, the date when the Supreme Court denied his petition.  See Clay v. United States, 537 U.S. 522, 527 (2003); Darcus v. United States, 132 S. Ct. 576 (2011).  On November 7, 2012, Darcus filed his § 2255 Motion within the statute of limitations.[12]  (§ 2255 Mot. 13.)  However, Darcus filed his First Motion to Amend on February 3, 2015, more than three years after his conviction became final.  Because Darcus failed to file his First Motion to Amend within the one-year limit, the statute of limitations bars the motion unless Darcus demonstrates entitlement to a belated commencement of the limitations period under 28 U.S.C. § 2255(f)(2)-(4), entitlement to equitable tolling,[13] see United States v. Sosa, 364 F.3d 507,

---

[12] The Court deems an inmate's motion filed on the date it is handed to prison staff for mailing.  Houston v. Lack, 487 U.S. 266, 276 (1988).

[13] Neither Darcus nor the record suggests circumstances that warrant equitable tolling.

25

512 (4th Cir. 2004) (quoting <u>Rouse v. Lee</u>, 339 F.3d 238, 246 (4th Cir. 2003)), or the new claim relates back to the claims in the § 2255 Motion, <u>see</u> <u>Pittman</u>, 209 F.3d at 314.

### 2.  Belated Commencement

Darcus provides no argument for belated commencement or equitable tolling, but instead raises the following claims:

<div style="margin-left:2em;">

**Claim Six:** Darcus's plea was not knowing and voluntary because counsel failed to advise him of the advantages of "pleading guilty (straight up) or bench trial in order to preserve right to appeal." (First Mot. Amend 2-5.)

**Claim Seven:** Counsel was ineffective for erroneously advising Darcus he would not qualify for sentencing as a career offender. (<u>Id.</u> at 6-7.)

**Claim Eight:** Counsel was ineffective by failing to object to the Government's breach of the plea agreement because the Government agreed to recommend a concurrent sentence. (<u>Id.</u> at 8-10.)

</div>

Claims Six and Eight are reiterations of portions of Claims One and Three, which the Court has already determined are meritless. As to Claim Seven, Darcus fails to provide any argument as to why, acting with due diligence, he could not have discovered the facts supporting this claim within the one-year limitations period. Because Darcus fails to demonstrate any meritorious grounds for belated commencement or equitable

tolling, the statute of limitations bars the amendment unless the claim relates back to a claim in the original § 2255 Motion.

### 3. Relation Back

Courts apply Rule 15 of the Federal Rules of Civil Procedure to motions to amend in a § 2255 case. Pittman, 209 F.3d at 317. Rule 15 allows for amendments to the petition after the one-year statute of limitations, provided the amendment relates back to the original timely filed petition. A claim relates back if it "arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B).

An amended claim "does not relate back (and thereby escape[s] AEDPA's one-year time limit) when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." Mayle v. Felix, 545 U.S. 644, 650 (2005). In this regard, it is not sufficient that the new claim simply "has the same form as the original claims," if the new claim "arises out of wholly different conduct." Pittman, 209 F.3d at 318. Thus, "a petitioner does not satisfy the Rule 15 'relation back' standard merely by raising some type of ineffective assistance in the original petition, and then amending the petition to assert another ineffective assistance claim based upon an entirely

27

distinct type of attorney misfeasance." United States v. Ciampi, 419 F.3d 20, 24 (1st Cir. 2005) (citing Davenport v. United States, 217 F.3d 1341, 1346 (11th Cir. 2000); United States v. Duffus, 174 F.3d 333, 337 (3d Cir. 1999)).

In his original § 2255 Motion, Darcus raised four claims of ineffective assistance of counsel attacking counsel's failure to inform the Court of the parties' alleged agreements about his sentence, counsel's failure to provide correct advice following the March 3, 2009, conference call, counsel's failure to object to testimony during the hearing on Darcus's motion to withdraw his guilty plea, and counsel's failure to inform the Court of Darcus's disability.

In Claim Six, Darcus asserts that counsel was ineffective for failing to advise him of the advantages of "a 'straight up plea' or a 'bench trial on stipulated facts'" in order to preserve his right to appeal. (First. Mot. Amend 3.) As discussed above in Part II.A.1, the Court has already determined that this claim is meritless. Even if counsel had discussed those options with Darcus, they were not options that were actually available. Accordingly, allowing Darcus to amend on this ground would be futile.

Similarly, in Claim Eight, Darcus argues that counsel failed to advise the Court that the Government had breached the

28

plea agreement by not recommending a concurrent sentence. This claim relates back to his § 2255 Motion because it is a reiteration of Claim One. However, as discussed above in Part II.A.1, the Court has already determined that this claim is meritless. Accordingly, allowing Darcus to amend on this ground would be futile.

In Claim Seven, Darcus contends that counsel was ineffective for erroneously advising him that he would not be sentenced as a career offender. (Id. at 6-7.) Darcus raised no claims in his § 2255 Motion regarding counsel's deficient advice about his sentencing exposure. Accordingly, this claim "arise[s] from [a] separate occurrence[] of 'both time and type'" than his original claims. Pittman, 209 F.3d at 318 (quoting United States v. Craycraft, 167 F.3d 451, 457 (8th Cir. 1999); see Mayle, 545 U.S. at 659 ("[R]elation back depends on the existence of a common core of operative facts uniting the original and newly asserted claims." (internal quotation marks omitted) (citing Fed. R. Civ. P. 15(c)(2)). Therefore, Claim Six fails to relate back and is barred by the statute of limitations.

### III. OUTSTANDING MOTIONS

Darcus's § 2255 Motion was accompanied by a motion to proceed in forma pauperis. (ECF No. 132.) However, this motion will be denied as moot because no filing fee is required for a § 2255 motion. Darcus has also filed a Motion to Amend a Pending Motion to Renew a Motion for Appointment of Counsel (ECF No. 141.) That motion will also be denied as moot because Darcus's motion to renew the motion to appoint counsel was denied on May 22, 2013. (ECF No. 149.) Moreover, Darcus's Motion for an Evidentiary Hearing (ECF No. 152) will be denied as moot because, as set forth above, the record conclusively demonstrates that Darcus is not entitled to relief.

Darcus has also filed a Motion for Copies of Transcripts. (ECF No. 158.) In that motion, Darcus requests that the Court send transcripts to him free of charge. Copies of documents are provided to indigent litigants at government expense only upon a showing of particularized need. Darcus fails to make any showing of particularized need. Rule 2(b) of the Rules Governing Section 2255 Proceedings requires only that the facts in support of a claim for relief be set forth in summary form. Darcus can rely upon his own recollection of the court proceeding. See United States v. Butler, 178 F. App'x 327 (4th Cir. 2006) (citing United States v. Shoaf, 341 F.2d 832, 835

(4th Cir. 1964)).  Darcus is not entitled to free copies "merely to comb the record in the hope of discovering some flaw." United States v. Glass, 317 F.2d 200, 202 (4th Cir. 1963). Darcus should seek to obtain his criminal file from his attorney.    Accordingly, Darcus's Motion for Copies of Transcripts (ECF No. 158) will be denied.

### IV.  CONCLUSION

For the foregoing reasons, Darcus's § 2255 Motion (ECF No. 133) will be denied.  Darcus's motion to proceed in forma pauperis (ECF No. 132) and motion to amend pending motion to renew appointment of counsel (ECF No. 141) will be denied as moot.  Darcus's motion for an evidentiary hearing (ECF No. 152) will be denied as moot.  Darcus's First Motion to Amend his § 2255 Motion (ECF No. 154) will be denied.  Darcus's Second Motion to Amend his § 2255 Motion (ECF No. 155) will be denied. Darcus's Motion for Copies of Transcripts (ECF No. 158) will be denied.  The Court will deny a certificate of appealability.

The Clerk is directed to send a copy of the Memorandum Opinion to Darcus and counsel of record.

It is so ORDERED.

                                        /s/   REP
                          _____
                          Robert E. Payne
                          Senior United States District Judge

Richmond, Virginia
Date:  November 12, 2015

                          31